## ROGERS v. LOGAN.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1921.)

No. 3662.

Money received ⚖︎6(6)—Money recoverable, where purpose for which received is not carried out.

In correspondence between the parties by letter and telegram, the sole subject of which was the purchase by plaintiff of stock of a corporation to be organized by defendant, in the course of which plaintiff wired, "will take the ten thousand," and remitted to defendant $10,000, a statement in a letter, "In all matters treat this $10,000 as you would your own," held not to authorize defendant to use the money in a partnership or joint adventure, nor to relieve defendant from the obligation to return it, where the corporation was not organized.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by G. T. Rogers against J. J. Logan. Judgment for defendant, and plaintiff brings error. Reversed.

John C. Cooper, John C. Cooper, Jr., and H. P. Osborne, all of Jacksonville, Fla., for plaintiff in error.

William H. Rogers and Russell E. Colcord, both of Jacksonville, Fla. (Reynolds & Rogers, of Jacksonville, Fla., on the brief), for defendant in error.

---

⚖︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the plaintiff in error, G. T. Rogers (herein referred to as the plaintiff), against the defendant in error, J. J. Logan (herein referred to as the defendant). The declaration contained four counts. The first count was for money payable by the defendant to the plaintiff for money lent by the latter to the former; the second count was for money payable by the defendant to the plaintiff for money paid by the latter to the former at his request; the third count was for money payable by the defendant to the plaintiff for money received by the former for the use of the latter; and the fourth count was for the conversion by the defendant of $10,000 in cash belonging to the plaintiff.

The defendant pleaded the general issue and a special plea, which undertook to set up the existence of an unsettled partnership between the plaintiff and the defendant, and that the money received by the latter from the former was the former's contribution to the partnership capital. A demurrer to the special plea was overruled, and replications to that plea were filed, which replications were demurred to.

The rulings on the demurrers mentioned need not be passed on, as matter such as that which was set up or sought to be set up by the special plea was available to the defendant under the plea of the general issue. The averments of each of the counts would be disproved by showing that the money received by the defendant from the plaintiff was contributed by the latter to a partnership between the two, was used by the former in the partnership business, and that there had been no settlement or adjustment of that business.

The suit asserted a liability of the defendant to the plaintiff for the sum of $10,000 and interest, the sum mentioned being the proceeds of the plaintiff's check for $5,000 and his note for $5,000, sent by mail by the plaintiff from Binghamton, N. Y., to the defendant at Jacksonville, Fla., on July 21, 1916. In behalf of the plaintiff it was contended that the remittance was made to pay for $10,000 of corporate stock, which the plaintiff had agreed with the defendant to take, and that the defendant misapplied the money by using it for another purpose, which was not authorized or consented to by the plaintiff. In behalf of the defendant it was contended that the sum mentioned was contributed by the plaintiff to a partnership venture, to which the plaintiff and the defendant were parties, and was used by the latter for a partnership purpose.

The plaintiff, Mr. Rogers, lives at Binghamton, N. Y. The defendant, Mr. Logan, lives at Jacksonville, Fla. They became acquainted while Mr. Rogers was visiting Florida in the winter of 1915–1916. Logan called to the attention of Rogers a property known as the Atlantic Beach property, consisting of a hotel on the beach about 17 miles from Jacksonville and several thousand acres of land. The two discussed plans of acquiring the ownership of that property, subject to an existing mortgage on the whole or part of it. A plan discussed involved the formation of a corporation and the borrowing of a considerable sum of money. No agreement on the subject was reached while Mr.

Rogers was in Florida, but he stated he would try to arrange with a bank in New York for the loan desired. There was correspondence on the subject between Logan and Rogers after the latter returned to his home. That correspondence disclosed the following:

Rogers failed in his efforts to arrange for the desired loan. After this occurred, the following letters and telegrams passed between the parties:

"Jacksonville, Fla., June 17, 1916.

"Mr. G. Tracy Rogers, 5 Nassau Street, New York, N. Y.—My Dear Mr. Rogers: Your wire received, and in answer thereto would say that, since talking with you, we are completing the disposition of a part of the company's lot holdings to pay $30,000 or a little more of the indebtedness, so that the whole property, as it stands now, will cost us $170,000. Of this, we are to pay in $100,000 for stock in the new company, and we will then owe $70,000, which we have arranged for with banks and individuals for some time ahead, and we can carry it in this way for any reasonable time we want to. If we should get an opportunity in the meantime to refinance it, for a long period of time, at a reasonable rate, we would do it; but this is not absolutely necessary. I believe that the shares based on there being only $100,000 will be worth more than the way we figure it.

"I shall be disappointed to think you are not in on it, and would like for you to come in for ten or more. The control will rest in three of us—you, Mr. Raymond, of the Clyde Line, and myself, or you, Mr. H. Bull, and myself.

"Please write me on receipt of this, Monday, as I must proceed and get it closed up right away, both because the option has not long to run, and because of the fact that we have been figuring with some people on part of property, and we cannot do anything with them until we get this closed.

"If your friend, you mention, wants to come in for $10,000, it is all right with me. You can do just as you prefer about this.    J. J. Logan."

"J. J. Logan, Jax.    New York, June 19.

"Letter recd. Will take the ten thousand have written.

"G. T. Rogers."

"N. Y., June 19, 1916.

"J. J. Logan, Esq., Jacksonville, Florida—My Dear Mr. Logan: Our friend, Steele, will not be back for eight or ten days. I don't know whether he will have the other $10,000 or one-tenth interest.

"Let me know, by wire, when you must have the money, and I will have it on deposit with Simmons & Slade, subject to draft. Make it as late as you can, because I am going to Kentucky Thursday, from there to Joplin, Missouri, and then back here the latter part of the month.

"In all matters treat this $10,000 as you would your own. I congratulate you most sincerely on putting the deal through.

"With kind regards from Mrs. Rogers and myself to you and Mrs. Logan, I am,

"Yours truly,    G. T. Rogers."

Between June 22, 1916, and June 24, 1916, telegrams and letters passed between Rogers and Logan in regard to Logan getting some one to take Rogers' place, because of unexpected calls upon the latter. On June 24th Logan sent to Rogers a letter, of the body of which the following is a copy:

"Your wire received, and in reply thereto would say that, after the receipt of your various communications on the subject, I subscribed the $10,000 for you, and stated to the parties that the funds would be available when the trade was ready to close. I do not see what else I can do but make it good if you do not, so would be glad to have you advise me definitely and finally on receipt of this. As I am going into it quite heavily myself, it would be considerably embarrassing to me to make good yours, as well as my own.

"If it would help you any, I could arrange it by your paying one-fourth or one-half the amount, and I will arrange to discount your note for three or four months for the balance."

The check and note above mentioned were remitted, with a letter of which the following is a copy:

"Binghamton, N. Y., July 21, 1916.

"Mr. J. J. Logan, Jacksonville, Fla.—My Dear Mr. Logan: I regret sincerely that I was away when your telegrams came. There was considerable mixup. You wired Mr. Cunningham or me in New York to have check, etc., at the Waldorf on Sunday. Mr. Cunningham called at the Waldorf and tried to find you, but did not succeed.

"Have just wired you as follows: 'Just returned Western trip. Wrote you June sixteenth asking for details organization, etc., also twenty-first asking to advise when it was closed. No reply these inquiries. Leave for New York Tuesday night. Write fully. Mailing six months note with interest for five, check for five.'

"I inclose check on Metropolitan Trust Company, for $5,000, and my note payable at the First National Bank, Binghamton, for $5,000, with interest.

"Of course I must know some of the details, whether you took care of the balance by a loan whereby we may be called on for more money or an assessment, what interest you and your friends control; in fact, I want to know what you would desire under like circumstances.

"This comes at a practically hard time on me, as I have had several unexpected calls on me, and it has made me hard up; but I know this is a good thing, and if pushed ought to be cleaned up in a short time with great profits. I have every confidence in your ability to take care of this or any other proposition you might undertake.

"I shall be here until Tuesday night. Must attend some meetings in New York Wednesday. Will be in Buffalo Thursday and Friday, and then expect to take a week's business trip with some capitalists into the northern part of Canada, returning from Montreal to Rutland, Vt.

"With kind regards to Mrs. Logan and yourself, and regretting sincerely that I happen to be away on the Great Lakes, I am,

"Very truly yours,                                      G. T. Rogers."

On the same date Logan addressed the following letter to Rogers:

"Jacksonville, Fla., July 21, 1916.

"Friend Rogers: Without repeating wires passed between us, I gather that on account of some changes you would prefer to be relieved of the obligation to put $10,000 in the Atlantic Beach property. I, of course, acted on your letter and telegram saying you would take $10,000, and could not back out if I wanted to, and I don't want to; but, if it will help you, I think I would be willing to buy your interest if you can arrange to discount my note for a year or for six months with an agreement for one renewal of six months (my paying the discount, of course).

"I couldn't pay it for about a year, and wouldn't want to buy it, except on sufficient time, so I know I could meet it. The stock wouldn't be available in time to put it up as collateral, so you would have to be able to use my plain note.

"If this suits you better than to make the payment of $10,000, wire me on receipt of this.

"Yours very truly,                                      J. J. Logan."

A letter of Rogers to Logan, dated July 22, 1916, contained the following:

"I remitted you the $10,000 promptly upon my return home yesterday, as you know by this time. I shall be governed entirely in this matter, as to sale of stock or holding it, by you. I am, as you know, relying entirely upon

your judgment in this matter; but I do want some details, which I have not received, and which I am entitled to. I trust you will send the same promptly."

The following is the body of a letter of Logan to Rogers, dated July 24, 1916:

"Your telegram of the 21st to hand, and in reply thereto would say that I wrote you on June 17th about the details of the organization, and should there be any other information you want, which is not contained therein, kindly advise, and I shall be glad to furnish it."

The above-quoted correspondence requires the conclusion that the remittance of the $10,000 by Rogers to Logan was in compliance with the former's agreement to take that amount of stock in a corporation, the organization of which was in charge of the latter, to whom was left the selection of another or others to be associated with them in the control of the proposed corporation. The circumstances attending the making of the statement contained in the Rogers letter of June 19th, "In all matters treat this $10,000 as you would your own," forbid giving to that statement the effect of authorizing Logan to use the money sent otherwise then in paying for the corporate stock which Rogers, by a telegram of the same date, agreed to take. Logan's letter of June 17th, to which Rogers replied by the telegram and letter of June 19th, was an invitation to Rogers to take stock in a proposed $100,000 corporation. The last-quoted statement is to be read in the light of the fact that the sole subject dealt with in the letter which contained it was the taking of stock in a corporation the promotion and organization of which were in charge of Logan. It could have meant no more than that, in the matter of taking such stock for Rogers, Logan was expected to use the $10,000 as he would use his own money.

After the date of the letter last above set out there was considerable additional correspondence between Rogers and Logan in regard to the same matter. Nothing in that correspondence furnished any support for a finding that Rogers consented that the $10,000 he remitted might be used otherwise than in paying for the stock he had agreed to take. A letter of Logan to Rogers, dated July 31, 1916, contained the following:

"Yours of the 28th to hand, and in reply thereto would say that the amount authorized capital of the new company has not been fully decided on yet. We will probably make it somewhere from $150,000 to $250,000, and when this company is duly incorporated and authorized to issue its stock, you will get title to 10 per cent. of the amount issued, and in the meantime I am holding for your account $25,000 of the first mortgage bonds on the property.

"If we make the capital stock of the company $250,000, we will probably issue to the original syndicate $150,000 of it, which would make your share $15,000, leaving $100,000 stock in the treasury for sale in future, if the stockholders should decide it was advantageous to sell it for improving the property or for other corporation purposes."

The reply of Rogers, dated August 5, 1916, contained the following:

"I was very much pleased to receive yours of the 31st ult. I think the plan of issuing 250 shares of stock, and issuing to the original syndicate 150, and then leaving $100,000 stock in the treasury, is a very good one. Of course,

you know by what I am doing that I am leaving everything to your best judgment. I regret that I was not able to take more, but I am tied up just now."

The just-quoted part of the correspondence shows that Rogers acquiesced in a proposed change in the amount of the capital stock of the corporation he was to take stock in; but neither that nor any other part of the correspondence indicated that Rogers consented that his money be used otherwise than for the purpose for which it was remitted. There was nothing in the correspondence to disclose to Rogers that Logan's scheme for the organization of the proposed corporation remained wholly unexecuted. The correspondence was the only evidence of the authority conferred on Logan by Rogers with reference to the use to be made of the $10,000 sent by the latter to the former. Nothing in that correspondence had any tendency to prove the existence of a partnership or joint adventure between Logan and Rogers, having for its object the acquisition of claims against the Atlantic Beach Corporation, the owner of the Atlantic Beach property, or the whole or part of that property, or that Logan, without effecting the organization of the contemplated corporation, was authorized to use the money remitted by Rogers in buying claims against the Atlantic Beach Corporation, or property belonging to that corporation.

Logan did not effect the organization of the proposed corporation, stock in which Rogers agreed to take. The remainder of the proposed capital stock was not taken, and the plan of getting a satisfactory third person as the associate of Logan and Rogers in the control of the proposed corporation was not carried out. Logan used the $10,000 sent by Rogers in paying or acquiring a note of the Atlantic Beach Corporation, which was signed also by Logan himself as joint maker, with $25,000 of that corporation's bonds attached. When this suit was brought, in November, 1917, the project of organizing a corporation, on the plan and for the purpose indicated in Logan's letter to Rogers of June 17, 1916, remained wholly unexecuted.

The plaintiff excepted to the refusal of the court to instruct the jury to find a verdict in his favor, and to its action in charging the jury to the effect that they might find from the evidence that there was a partnership between the plaintiff and the defendant for the purchase or attempted purchase of the property and assets of the Atlantic Beach Corporation and the sale thereof for their profit on equal terms. We are of opinion that the court erred in the rulings mentioned. The evidence without conflict showed that Rogers remitted to Logan the $10,000, to be used in paying for corporate stock the former had agreed to take; that the proposed corporation was not organized within a reasonable time, and remains nonexistent; and that the money remitted was used by Logan for a purpose not authorized or consented to by Rogers. The evidence discloses a case of money paid on a consideration which has failed, with the result that the payor is entitled to get his money back from the person who received and misapplied it. 14 Corpus Juris, 276.

The judgment is reversed.